RECEIVED
IN MONROE, LA
AUG 5 - 2008
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| DOROTHY COOPER | CIV. ACTION NO. 07-1208 |
| VERSUS | JUDGE ROBERT G. JAMES |
| COLDWELL BANKER, ET AL. | MAG. JUDGE MARK L. HORNSBY |

## RULING

Plaintiff Dorothy Cooper ("Cooper") brought this lawsuit against Defendants Scott Dove ("Dove") and Group One Realty d/b/a Coldwell Banker Group One Realty ("Group One") on the basis that they denied her the right to purchase residential property based on her race. Pending before the Court is a Motion for Summary Judgment [Doc. No. 28] filed by Defendants.[1]

On May 20, 2008, Cooper filed a Memorandum in Opposition to the Motion for Summary Judgment [Doc. No. 30].

On May 29, 2008, the Court granted Defendants leave to file a Reply Memorandum [Doc. No. 34].

On June 11, 2008, the Court granted Cooper leave to file what she called a "reply," but what are in actuality a late-filed statement of material facts and an affidavit in support of her opposition to Defendants' Motion for Summary Judgment. [Doc. No. 39]. While the Court

---

[1] Group One was mistakenly identified in the initial complaint as "Coldwell Banker" and "CB Group One Monroe," but Group One is the proper Defendant. Cooper also brought suit against individual Defendants Daryl Beasley and John Holt. Beasley was dismissed by the Court's January 24, 2008 Judgment [Doc. No.15]. Holt was dismissed under Local Rule 41.3W because Cooper failed to obtain service on him. *See* [Doc. No. 37]. Dove and Group One are the only remaining Defendants.

1

allowed Cooper's filing over Defendants' opposition, the Court stated that it would consider the admissibility of the statements contained in Cooper's affidavit when ruling on Defendants' Motion for Summary Judgment.

For the following reasons, Defendants' Motion for Summary Judgment is GRANTED.

## I. FACTS

In 2005, John Holt ("Holt") contacted Dove of Group One about serving as a listing agent for the sale of his property at 373 McCollum, Grayson, Louisiana, which consisted of 30 acres and a wooden frame house. On November 18, 2005, Holt executed an Exclusive Right to Sell Agreement, which identified Group One as the listing agency and named Dove as the seller's agent. The listed sales price was $89,750.00.

On May 12, 2006, Cooper, who is African-American, made a written offer to purchase Holt's property for $69,000.00. Cooper, her mother, and her agent, Doris Hicks ("Hicks"), had viewed and inspected the property prior to the offer.

At some time prior to Cooper's offer, Holt allegedly told Dove to "keep blacks out of the property." Dove allegedly relayed this statement to Hicks.

Dove did not know Cooper, speak to her, see her, or know her race. Thus, Dove did not inform Holt of Cooper's race.

When he received Cooper's offer from Hicks, Dove relayed it to Holt. On May 16, 2006, Holt made a written counter-offer. He demanded a price of $70,000.00, refused to pay closing costs or leave furniture, and required that he be allowed to retain occupancy for a certain period of time after closing.

On May 18, 2006, Cooper made a counter-offer requiring Holt to pay for use of the property after closing and some other conditions.

2

On May 19, 2006, Holt rejected Cooper's counter-offer and made no further counter-offers.

On May 29, 2006, Cooper made a second written offer to purchase the property for $70,000.00, with closing on or before June 30, 2006. Cooper's offer was conditioned upon obtaining financing of 95-100% of the purchase price on a 30-year loan with an interest rate not to exceed 6.25%, with origination and discount fees not to exceed 1%. Cooper's offer also required Holt to pay her $300 in rent for the time needed to vacate.

On May 30, 2006, Holt made a written counter-offer, stating that he would attempt to vacate within seven (7) days of closing, but he would not pay for the extra time. Dove delivered the counter-offer to Hicks, and Hicks told Dove that the counter-offer was acceptable to Cooper. However, neither Hicks nor Cooper made a written response.

On June 12, 2006, Cooper delivered a deposit check of $1,400.00 to Group One to hold in escrow. The following day, June 13, 2006, the property was designated on the Multi-Listing Service as "active pending," which means that there is a contract to sell and a pending sale.

The May 30, 2006 contract required Cooper to provide written proof of her making a good faith loan application within three (3) business days of the acceptance of the offer. The contract also required Cooper to provide written proof of loan pre-approval, including verification of credit, employment and funds to close by June 30, 2006, or the contract was "void-able at the seller's option." The contract was also conditioned on appraisal of the sales price or greater. Although Dove contacted Hicks several times to request a status on Cooper's financing, Cooper did not provide written documentation of efforts to obtain financing, her possession of funds or financing, or the performance of an appraisal between June 12, 2006 and June 30, 2006.

3

On the afternoon of June 30, 2006, the date of the scheduled closing, Hicks faxed to Dove a request that Holt agree to an extension of the closing date until July 14, 2006. Hicks did not explain why Cooper needed an extension. Holt refused to extend the closing date. Dove relayed Holt's refusal to Hicks. The property was designated as "back on the market" after the closing failed to go through.

On July 7, 2006, Dove received a fax from Hicks showing that Cooper was pre-approved by The Mortgage Link of Lafayette, Louisiana, for an adjustable rate loan for only 80% of the sales price at an initial rate of 9.2%, conditioned upon final loan approval, including satisfactory appraisal and title search. Cooper did not have $14,000.00 to fund the remaining 20% of the purchase price.

On July 10, 2006, Holt authorized Group One to release Cooper's deposit. Cooper approved release of the deposit on July 12, 2006.

Also on July 10, 2006, Holt entered into a contract to sell the property to Darrell Proffer for $70,000.00, and the sale closed on August 1, 2006.

Cooper never met Dove during the negotiations and had no reason to believe that he had seen her.

## II. LAW AND ANALYSIS

### A. Motions for Summary Judgment

"A party claiming relief may move, with or without supporting affidavits, for summary judgment on all or part of the claim." Fed. R. Civ. P. 56(a). Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317,

4

322-27 (1986). When considering a motion for summary judgment, the court must view the "evidence and inferences from the summary judgment record" in the "light most favorable to the nonmovant." *Minter v. Great Am. Ins. Co. of N.Y.*, 423 F.3d 460, 465 (5th Cir.2005).

The moving party bears the initial burden of informing the court of the basis for its motion by identifying the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which highlight the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *see also* Fed. R. Civ. P. 56(e)(2) (If "a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."). "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue

for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (Nonmovant must produce more than "some metaphysical doubt as to the material facts.").

**B.    Race Discrimination**

Title VIII of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, provides, within constitutional limitations, for "fair housing throughout the United States." The FHA makes it unlawful "for any person to refuse to sell . . . a dwelling to any person because of race."[2] 42 U.S.C. § 3604.

Title 42, Sections 1981 and 1982, also guarantee the right to contract and purchase property regardless of race.[3]

Louisiana's Equal Housing Opportunity Act, La. Rev. Stat. 51:2601, *et. seq.*, originally enacted in 1991 as the Louisiana Open Housing Act, was modeled after the federal fair housing legislation and also prohibits racial discrimination in the sale of a dwelling. La. Rev. Stat. 51:2601 to 51:2614. In 1999, the name was changed to the "Louisiana Equal Housing

---

[2] A violation of the FHA may be shown either by proof of discriminatory intent (disparate treatment) or a showing of significant discriminatory effects (disparate impact). *See Simms v. First Gibraltar Bank*, 83 F.3d 1546, 1555 (5th Cir.1996)(citing *Hanson v. Veterans Administration*, 800 F.2d 1381, 1386 (5th Cir.1986)). Cooper argues only discriminatory intent in this case.

[3] If the time for filing this lawsuit began to accrue on June 30, 2006, when Holt refused to grant an extension of closing or July 12, 2006, when Cooper authorized the release of her deposit, then Cooper's lawsuit was not timely filed under 42 U.S.C. §§ 1981 and 1982 more than one year later on July 23, 2007. *See Jacque v. Orlando Rentals, Inc.*, Civil Action No. 05-2742, 2006 WL 2331043 at *1 (E.D. La. Aug. 9, 2006). However, Defendants have not raised the issue of timeliness, and there may be some argument that her claim began to run when the property was sold on August 1, 2006. Even if Cooper's §§ 1981 and 1982 claims were time-barred, she timely filed claims under the FHA and Equal Housing Act, which both have two-year statute of limitations. 42 U.S.C. § 3613(a)(1)(A); La. Rev. Stat. § 51:2613.

Opportunity Act." Acts 1997, No. 1141, eff. July 1, 1999.

Under each of the federal statutes, a plaintiff is required to present a prima facie case of discrimination. *See Scruggs v. Marshall Housing Authority*, No. 00-40216, 232 F.3d 210 (Table), 2000 WL 1273473 (5th Cir. Aug. 23, 2000) ("The burden shifting framework of *McDonnell Douglas* . . . applies in housing discrimination cases under the FHA."); *Selden Apartments v. United States Dep't of Housing and Urban Dev.*, 785 F.2d 152, 159-60 (6th Cir. 1986) (FHA and Sections 1981 and 1982). Because the Equal Housing Act mirrors the FHA, the Court finds it appropriate to apply the same method of proof. *See generally Louisiana Acorn Fair Housing v. Quarter House*, 952 F. Supp. 352 (E.D. La. 1997) (finding that a unit in a timeshare resort is a "dwelling" within the provisions of the federal FHA and the Equal Housing Act).

In order to make out a prima facie case of race discrimination in the sale of property, a plaintiff under these statutes must show that (1) she is a member of a protected class, (2) she applied and was qualified to purchase property, (3) was rejected or otherwise discriminated against, and (4) the property remained available thereafter. Defendants do not dispute that Cooper is a member of a protected class (African-American) or that the property remained available for sale, but argue that she cannot make out the other elements of a prima facie case of discrimination.

Defendants have presented affidavit testimony from Dove that he did **not** know Cooper's race until this lawsuit was filed and that he could not have and did not convey her race to his client, Holt. Defendants have presented further evidence that Cooper had not provided information required by the contract prior to June 30, 2006, the date of closing, and that, in fact, she was not prepared to close on June 30, 2006. The contract specifically provided that Cooper

was required to provide written proof of loan pre-approval, including verification of credit, employment and funds to close by June 30, 2006, or the contract was "void-able at the seller's option." Instead, on the afternoon of June 30, 2006, Hicks faxed a request from Cooper for an extension of the time to close. Holt refused that request.

In response, Cooper first submitted an unsupported memorandum of law, arguing that she was told by her agent, Hicks, that (1) Holt was "tipped off as to the race of the prospective buyer when . . . Hicks [who is African-American] left her card on the property," (2) "that he was specifically informed of [the] race [of Cooper, her mother, and Hicks] by . . . Dove," (3) that Holt's response was that Group One "was to 'keep those blacks–three black[s] out of his house and off his property.'" [Doc. No. 30]. Cooper further alleged that Defendants discriminated against her because Dove had told Hicks that Cooper had been granted an extension on the closing date, but then negotiated a new sale with a white buyer. However, a comparison of Cooper's affidavit with her deposition testimony indicate that these allegations are not supported by proper summary judgment evidence.[4]

Although the Court allowed Cooper to submit a late-filed affidavit and statement of material facts over Defendants' objections, she has still failed to present proper summary judgment evidence sufficient to raise a genuine issue of material fact for trial. Her only alleged evidence of race discrimination are the following statements contained in her affidavit:

(4) She was informed by Coldwell Banker agent Doris Hicks that Scott Dove, a Coldwell Banker agent for the seller disclosed her race to the owner of the property John Holt.

(5) After the Disclosure, Scott Dove informed Doris Hicks that Mr. Holt said that he

---

[4]Cooper apparently dropped the allegation in her Complaint that Hicks was fired as a result of her questioning of Dove's actions.

8

> wanted to "keep the Blacks out of his house and off his property."

. . .

> (7) She applied for a 14 days [sic] extension of her loan and was informed by Coldwell Banker agent Doris Hicks that Scott Dove informed her that her extension had been granted.

However, Cooper's own deposition and the other evidence in this matter show that her statements cannot serve to defeat summary judgment. First, Cooper has no evidence to support her statement that Dove disclosed her race to Holt.[5] At her deposition, Cooper admitted that she had never met Dove before that day, and she did not have any reason to believe that he had met or seen her before. Cooper explained that her agent, Hicks, "drew" the inference that Dove told Holt Cooper's race because Holt allegedly told Dove to "keep the blacks out of the property." Thus, Cooper has no admissible evidence that Dove knew her race or that he informed Holt of her race. At best, Cooper has testified as to her assumption about Hicks's assumption.

Second, Holt's alleged statement to Dove is not admissible. Holt is not a party to this litigation, and Cooper has offered no argument or authority to suggest that his alleged hearsay statement to Dove is appropriate summary judgment evidence.[6] *See* Fed. R. Evid. 801(c) (Hearsay is "a statement, other than the one made by the declarant while tesifying at trial or hearing, offered in evidence to prove the truth of the matter asserted."); *Martin v. John W. Stone*

---

[5] As Defendants point out, Cooper's affidavit is also at odds with the argument in her memorandum that Holt was "tipped off" to her race because Hicks, who is African-American, left her business card at the property.

[6] Arguably, if Holt's statement to Dove were admissible, the Court could consider Dove's recital of the statement to Hicks. Certainly, any statement made by Dove could be used against him. Additionally, statements made by Dove and Hicks "concerning a matter within the scope of [their] agency or employment, made during the existence of the relationship" could be used against Group One, their employer. Fed. R. Evid. 801(d)(2)(D).

9

*Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (The Court may not "properly consider hearsay evidence in affidavits and depositions.").

Third, even if Hicks told Cooper that Dove granted an extension of the deadline for closing, only Holt could give Dove the authority to grant an extension. Cooper is again relying on hearsay and speculation which is refuted in proper summary judgment form by Dove. Dove testified that he discussed Cooper's request for an extension with Holt and that Holt would not grant the extension. Dove further testified that he notified Hicks of Holt's refusal.[7]

Cooper has no admissible evidence that Dove or, through Dove, Group One, took any action to prevent her from purchasing Holt's property because of her race. Thus, she cannot show that she was "rejected" or "otherwise discriminated against" by Dove and Group One.[8]

Moreover, even if Cooper had produced evidence sufficient to create some circumstantial inference of race discrimination by Defendants, the undisputed evidence shows that she was not qualified to purchase the property on the date of closing under the terms she negotiated. Even when Cooper obtained pre-loan approval on July 7, 2006, a week after the closing was to take place, she did not receive the financing called for in the contract and did not have the additional funds, but believed she could obtain them from her family.[9]

---

[7]If Cooper believed that she had an extension of time until July 14, 2008, to close, then it simply makes no sense that on July 12, 2006, she signed for the return of her deposit.

[8]Notably, Cooper has produced no evidence that Dove or, through him, Group One, made any statements that could be viewed as evidencing discriminatory intent. Cooper's theory would have to be that Dove conspired with Holt to prevent her from purchasing the property. She has offered no evidence of such a conspiracy.

[9]Cooper thought she had obtained a loan for the full purchase price until her deposition. [Cooper Depo., pp. 58-60].

10

## III. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [Doc. No. 28] is GRANTED, and Cooper's claims are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 5 day of August, 2008.

*Robert G. James*

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE